## Case No. 7,845.

### KIRKLAND v. The FAME.

[N. Y. Times. Dec. 25, 1861.]

District Court, S. D. New York. Dec.. 1861.

BILLS OF LADING—"PERIL OF THE SEA"—DAMAGE BY RATS—LIABILITY OF CARRIERS.

[1. Damage by rats is not a "peril of seas and navigation" within the clause of a bill of lading exempting the carrier from liability for such perils.]

[Cited in The Isabella, Case No. 7,099; The Carlotta, Id. 2.413.]

[2. In a voyage from a port known by the master to be infested with rats, the keeping of cats on board is not a sufficient exercise of diligence to excuse the carrier from liability for damage from that cause.]

[This was a libel by Kirkland against the bark Fame for damage to cargo.]

Benedict, Burr & Benedict. for libelants.
Burrill, Davison & Burrill, for claimant.

SHIPMAN, District Judge. This libel seeks to recover damages for injuries to a cargo of coffee transported in the bark Fame from Rio Janeiro to the port of New York. From the evidence before the court it appears that the cargo was considerably damaged on the passage. The answer .alleges that this damage occurred, not from any cause for which the bark- or her owners are responsible, but solely from "the dangers and accidents of the seas and navigation," in which terms the exception in the bill of lading exempts the carriers from all liability. It is clear from the evidence that a portion of the injury was caused by rats gnawing the packages. This fact was anticipated by the answer, and the latter alleges that due care was exercised, two cats being kept on board from the time the coffee was laden at Rio until it was discharged at New York. The claimants insist that, having exercised due care and diligence, the injury by rats is within the exceptions of the bill of lading, and is to be deemed one of the "dangers or accidents of the seas and navigation." On the other hand, the libelants maintain, as a matter of law, that damage to a cargo by being gnawed by rats is not a peril of the sea within the meaning of that term or terms used in the bill of lading; and that therefore, the claimants cannot exempt themselves from liability by showing that they took certain precautions to prevent it. This question of the liability of shipowners for damage done to a cargo by rats has been the subject of repeated decisions by courts, and has been often discussed by elementary writers. Opinions have not been uniform in regard to what should be the rule.

The oldest case which has been generally relied on at all is that of Dale v. Hall, 1 Wils. 281. That was an action in the king's bench on a contract to carry. Mr. Justice Burnett, on the trial, admitted evidence to show that rats had gnawed a hole through the bottom of the vessel, by reason of which the damage occurred. A verdict was given for the defendant, and, on a motion for a new trial the verdict was set aside (see chapter 1), remarking that the ruling below was clearly wrong. In this the whole court concurred. By the report of the case it appears that the judge who tried the case was in doubt as to the admissibility of the evidence. The case was decided in 1750. In the case of Hunter v. Potts. 4 Camp. 203, decided in 1815, Lord Ellenborough held, in a nisi prius trial, that a loss arising from the rats eating holes in the ship's bottom was not within the perils insured against in a common form of a policy of insurance. Of course he held it not a peril of the seas. But a very recent English case—Laveroni v. Drury, 16 Eng. Law & Eq. 510—fully sustains the claim of the libelants in this case. It was there held that, a cargo of cheese having been damaged by rats, the injury could not be attributed to a peril of the seas; that it was a kind of destruction not peculiar to the sea or navigation, or arising directly from it,

but one to which such a commodity as cheese is equally liable in a warehouse on land as in a ship at sea. The court held that the presence of cats on board, as is alleged in the present answer, was no defence. It is true that Judge Story states that the continental writers on maritime law maintain a different doctrine, although he says the English law holds the ship liable. But I do not understand him as indorsing the doctrine of the foreign writers, although he does not expressly dissent from it. In this country there are two cases which are in conflict with the English rule. Garrigues v. Coxe, 1 Bin. 592, and Aymar v. Astor, 6 Cow. 266. Of the former case, Angell, in his work of Law of Carriers, remarks: "But this has been considered and pronounced to be the only case contrary to the English law." As to the case of Aymar v. Astor, the reasoning of the court on this point does not appear to be wholly consistent with either doctrine, and consequently is sometimes cited as supporting the English rule, and sometimes as in conflict with it. The learned counsel for the libelants, in the case now under consideration, has cited it in support of his claim; but I agree with the counsel for the claimants, that it has no such effect. On the trial in the court below, the judge charged the jury that damage by rats was not a peril of the sea, and therefore not within that exception in the bill of lading. To this part of the charge exception was taken, and on the hearing on the writ of error judgment was reversed. Savage, C. J., said, in giving the opinion of the court,—and in this part of his opinion the whole court concurred: "The true question to be submitted to the jury was whether the master had used ordinary care and diligence in carrying the goods in question. Whether a cat is sufficient precaution against rats, or whether smoking the vessel is the proper or more efficacious remedy against this evil, is a proper consideration for the jury." This view of the court must have proceeded upon the idea that damage by rats was a peril of the sea, against which the masters and owners were not obliged to secure the cargo at all hazards, and therefore came within the exceptions of the bill of lading. This of course would let in the proof, and if the fact that ordinary care and diligence were used was proved, it would excuse the ship. Of course, too, without this care and diligence, the extremest perils of the sea could not excuse a loss. If a ship were destroyed by a tornado or engulphed by the Maelstrom, unless ordinary diligence to prevent it were shown, the loss would not be a peril of the sea within the meaning of the law. The result to which the court came in this case of Aymar v. Astor was a logical deduction from the principle which they assumed that the master of the vessel was "not responsible like a common carrier for all losses, except they happened by the act of God or the ene-

mies of the country." I understand that this principle has been distinctly overruled. Sewall v. Allen, 2 Wend. 327; Ang. Carr. §§ 80, 170, note; Greenl. Ov. Cas. (Rev. Ed. 1856) p. 23.

After a careful examination of the authorities, I am inclined to adopt the opinion of Chancellor Kent, who, after remarking that it was a "vexed question, upon which the authorities are much divided," says: "The better opinion would, however, seem to be that the insurer is not liable for this sort of damage, because it arises from the negligence of the common carrier, and it may be prevented by due care, and is within the control of human prudence and capacity." 3 Kent, Comm. 300, 301. This conclusion has since been strengthened by the case of Laveroni v. Drury, already cited. But whatever may be the conclusion warranted by the authorities, I do not think the master of the Fame has proven due diligence on his part. The witnesses offered by the claimants, consisting of several shipmasters who carry similar cargoes from Rio, state that it is a very bad port for rats. The master of the Fame himself testifies that it is the worst port for rats that he has ever visited, and that he always has more or less on board. Yet he admits that he did not use the sufficient precaution of fumigating his vessel. Knowing the danger as he admits he did, I think common prudence would have led to the use of every known means of ridding the vessel of the vermin. Let a decree be entered for the libelants, with an order of reference; and let the commissioner, in his report, carefully distinguish the various kinds of damage to a cargo, and the cause of that damage.